JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GUZMAN,<br><br>          Plaintiff,<br>  vs.<br><br>KEYSTONE ENGINEERING CO. d/b/a NUSPACE, INC.,<br><br>          Defendant. | Civil Case No.: 2:24-cv-06453-RGK-BFM<br><br>[~~PROPOSED~~] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.) |

///
///
///

# CONSENT DECREE

The following Consent Decree is entered into by and between Carlos Guzman ("Plaintiff") and Keystone Engineering Co. d/b/a NuSpace, Inc., a California Corporation ("NuSpace" or the "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively the "Settling Parties" or "Parties".

WHEREAS, Plaintiff is a citizen of the State of California.

WHEREAS, Plaintiff is concerned with the environmental health of the Los Cerritos Channel, its inflows and outflows including the Alamitos Bay, and the overall Alamitos Bay Watershed, of which the Los Cerritos Channel is a part, and uses and enjoys the waters of the Los Cerritos Channel, its inflows and outflows including the Alamitos Bay, and other waters of the Alamitos Bay Watershed;

WHEREAS, NuSpace is the operator of a facility that is engaged in industrial metal finishing operations, and is located at 4401 E. Donald Douglas Dr., Long Beach, CA 90808, hereinafter referred to by the Settling Parties as the "Facility;"

WHEREAS, Plaintiff contends that his use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

WHEREAS, Plaintiff contends he acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

WHEREAS, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit" or "Previous Industrial Stormwater Permit"), and as amended by Order No. 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA");

WHEREAS, the Facility is listed as operating under SIC Code 3499 relating to Fabricated Metal Products. Defendant obtained coverage for the Facility in 1992 under the California Industrial General Permit, under the issued WDID No. 4 19I000310. Defendant thereafter renewed the coverage for the Facility in 2015 under the same WDID No. The 2015 "Notice of Intent" for the Facility to comply with

the terms of the Industrial Stormwater Permit lists "Keystone Engineering Company" as the Operator and Facility names, respectively;

**WHEREAS**, on August 31, 2023, Plaintiff sent NuSpace, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the NuSpace Facility[1];

**WHEREAS**, on or about on January 4, 2024, representatives of the Parties (including Plaintiff's expert environmental consultant) conducted an inspection of the Facility;

**WHEREAS**, on July 31, 2024, Plaintiff filed a complaint against NuSpace in the United States District Court, Central District of California (Case No. 2:24-cv-06453-RGK-BFM), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the IGP at the NuSpace Facility ("Complaint");

**WHEREAS**, Plaintiff alleges NuSpace to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the NuSpace Facility;

**WHEREAS**, while disputing the validity of the assertions made by Plaintiff, NuSpace has agreed to undertake certain revisions as more fully described below in response to the allegations contained in Plaintiff's Notice Letter and Complaint;

**WHEREAS**, NuSpace continues to deny all allegations in the Notice Letter and Complaint relating to the NuSpace Facility;

**WHEREAS**, Plaintiff and NuSpace have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and Complaint without further proceedings; and

---

[1] For purposes of this Consent Decree, the Industrial General Permit and any amendments thereto in effect at the time of NuSpace's required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

1     **WHEREAS**, all actions taken by NuSpace pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

    NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:

**1.**     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

**2.**     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the NuSpace Facility is located within this District;

**3.**     The Complaint alleges claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.**     Plaintiff has standing to bring this action; and

**5.**     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree that is brought during the term of this Consent Decree.

## I.   OBJECTIVES

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Notice Letter and Complaint. Specifically, NuSpace agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that NuSpace "shall ensure that industrial storm water discharges … do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that NuSpace "shall implement BMPs [Best Management Practices] that comply with the BAT/BCT requirements of . . .[the IGP] to reduce or prevent discharges of pollutants in . . . [NuSpace's] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP. NuSpace shall maintain BMP compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP. Nothing herein shall be interpreted as an admission by

NuSpace that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

## II. AGENCY REVIEW AND TERM OF CONSENT DECREE

**A.    Agency Review and Comment.**  Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the later of: (i) the final signature of the Settling Parties, or (ii) the receipt by the Parties of any required additional documentation, for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to NuSpace.  In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**B.    Effective Date.**  The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C.    Termination Date.**  This Consent Decree shall terminate no later than three (3) years after the Effective Date ("Termination Date"), or at such time as NuSpace ceases to have stormwater discharges at the NuSpace Facility subject to the IGP and NuSpace:  1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff, if completed before three years.  If a motion regarding NuSpace's compliance with this Consent Decree is pending at the time the Consent Decree would otherwise terminate, the Court will retain jurisdiction to consider it.

## III. POLLUTION CONTROL REQUIREMENTS

**A.    Best Management Practices ("BMPs") and Monitoring Implementation Program ("MIP") Revisions.** NuSpace shall cause the following additional BMPs and/or MIP changes at the Facility to be carried out in the specified location within ninety (90) days of the Effective Date as follows:

    1.    Implement the BMPs described in the Facility's November 30, 2024 updated SWPPP, excluding drainage modifications which shall be completed by June 30, 2025;

**2.** Repair the seal between the trash compactor and the roll-off, so that liquids are less likely to leak out of the roll-off. Additionally and relatedly, include inspection and maintenance of this in the Preventive Maintenance BMPs Section of the SWPPP;

**3.** Place a drip pan with granular absorbent beneath the seal between the trash compactor and roll-off;

**4.** Include inspection of the condition of the trash compactor, drip pan, and any visible evidence of spills onto the concrete surface as part of a weekly visual inspections and monthly documented inspection;

**5.** Cause the loading dock sump pump's outflow to be redirected from the sewer system to discharge point DA-2 so that stormwater discharge collected by the loading dock sump pump can be properly tested under the Facility's monitoring and reporting program;

**6.** Consistent with the SWPPP, implement an inspection procedure and documented checklist for visually inspecting contained storm water in the loading dock consistent with the Sampling Event Visual Observations required by Section XI.A.2. of the IGP before activating the sump pump to discharge any contained storm water;

**7.** Place oil-absorbent and sediment filtration boom filters, or similar filter inserts, around the loading dock sump;

**8.** Lease or purchase an industrial vacuum sweeper for use on paved outside driveway and forklift operating areas, for use annually prior to the rainy season, and more frequently as needed, to remove dirt, brake dust, and tire debris;

**9.** Close off this gap that exists in the concrete curb on the north side of the employee parking area between the west end of the curb and the adjacent existing curb. This remediation should be done with an appropriate sealant (silicone, adhesive sealant, or grout) to ensure storm water does not discharge onto the neighboring property to the north. In the event that physical circumstances of certain portions of the affected area would limit the practical application of an appropriate sealant, it will be acceptable for NuSpace to utilize sandbags and/or berms to seal off such areas. Such sandbags and/or berms shall be replaced as is necessary to maintain their effectiveness; and

    10.    Until and unless concrete curbs are installed across the entire length of the north and east sides of the property, place sandbags and/or berms along the fence to prevent runoff under the fence onto the neighboring property. Such sandbags and/or berms shall be replaced as is necessary to maintain their effectiveness.

**B.**    **SWPPP Revisions/Amendments:** NuSpace shall carry out the following actions regarding the Facility's requisite Storm Water Pollution Prevention Plan (the "SWPPP") within ninety (90) days of the Effective Date as follows in the manner as specified below:

    1.    Revise Section 3.7 of the Facility's SWPPP related to Pollutant Source Assessment as follows:

        a.    Identify the types of metals stored on-site and used in production, including, but not limited to, aluminum, titanium, Inconel, stainless steel, and high nickel alloys, and include an assessment of the potential pollutants from the metals used at the facility based on their alloy compositions, potential metals include, but are not limited to: Aluminum (Al), Iron (Fe), Nickel (Ni), Copper (Cu), and Phosphorous (P);

        b.    Identify Copper (Cu) as a potential pollutant source from forklift use originating from forklift brake pads;

        c.    If used in operations, include X-Ray machine(s) used in non-destructive testing at the Facility, and the presence of Silver (Ag) in the fixer waste identified in the 2022 SWPPP Amendment; and

        d.    Include batteries as potential pollutant sources, including the specific battery types and compositions (example: alkaline batteries, lead acid, nickel-cadmium, nickel metal hydride, nickel-cadmium, lithium metal hydride, lithium ion, etc.), where they are used, and their associated potential pollutants (high pH, Cadmium (Cd), Nickel (Ni), Lead (Pb), etc.).

    2.    Revise, if not done so already, Section 5.3 of the Facility's SWPPP related to Sampling Procedures as follows:

        a.    If cadmium-containing batteries are identified as a potential pollutant source, add Cadmium (Cd) to the sampling parameters of the MIP; and

   b. If used in operations, include Silver (Ag) in the list of sampling parameters of the MIP.

**C. Numeric Action Levels ("NALs") and Numeric Effluent Limitations ("NELs") for Discharges from the NuSpace Facility.**

  1. The following Numeric Action Levels ("NALs") in the IGP are applicable to the Facility based on the general parameters required to be sampled pursuant to the IGP, its SIC code(s) and/or pollutant source assessment: (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Iron; (v) Aluminum; (vi) Zinc; and (vii) Nitrate + Nitrite Nitrogen (N+N).

  2. The following Numeric Effluent Limitations are applicable to the Facility based upon impairments of the receiving water, the total maximum daily load ("TMDL") of the receiving water, and the industrial activities carried out at the facility: (i) Copper; (ii) Lead; and (iii) Zinc.

  3. NuSpace will continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

  4. **Exceedance Response Actions (ERAs)**

   a. NuSpace is required to comply with the Exceedance Response Action requirements of the IGP as stated in IGP § XII.

**D. Sampling and Analysis**

  1. During the term of this Consent Decree, and as set forth in the IGP, NuSpace shall collect samples of Qualifying Storm Events ("QSE"), as defined in the IGP, from at least two QSEs during the first half of the reporting year (July 1 – December 31) and from at least two QSEs during the second half of the reporting year (January 1 – June 30) as set forth by IGP requirements. However, nothing herein shall require NuSpace to conduct sampling when a QSE, as defined by the IGP, does not occur. Furthermore, nothing herein shall require NuSpace to conduct sampling when no discharge resulting from a QSE occurs, for example, due to the implementation of BMPs that prevent storm water discharge.

  2. NuSpace shall comply with the analytical test methods as required by Section XI.B of the IGP as more fully described in the Monitoring Implementation Plan that is included in its SWPPP. All reported analyses required by the Consent Decree shall be reported within thirty days of the laboratory receipt of the sample or as promptly as possible upon receipt if the laboratory takes more than 30 days to

report the analyses.

  **3.** During the term of the Consent Decree, NuSpace will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree within fifteen (15) business days of certifying in SMARTS.

**E.** **Visual Observations**.  During the term of this Consent Decree, NuSpace shall conduct and document visual observations pursuant to Section XI.A of the IGP.

**F.** **Annual Report.**  NuSpace shall give notice, pursuant to Paragraph VIII(E) hereof, to Plaintiff when NuSpace submits an Annual Report to the State Board no later than July 15 of each year during the term of this Consent Decree.  The Annual Report shall contain all information required by the IGP.

**IV.** **MONITORING AND REPORTING**

**A.** **Site Inspections.**

  **1.** Plaintiff may conduct a site inspection of the exterior and non-sensitive areas of Facility consistent with the agreement regarding Plaintiff's original inspection one (1) time during the life of this Consent Decree, to confirm compliance with the terms of the Consent Decree. This inspection may occur during the Effective date, up to forty-five (45) days prior to the Termination Date.  Up to three (3) of Plaintiff's representatives may attend the site inspection.  The site inspection shall occur Monday through Friday, excluding Federal and religious holidays, and be scheduled for a time between 9:00 a.m. and 4:00 p.m.  Plaintiff and NuSpace shall work in good faith to select a mutually acceptable date for the inspection, which will be scheduled at least fifteen (15) business days in advance.  NuSpace's personnel, consultants, contractors, or attorneys may accompany Plaintiff's representative(s) throughout the inspection.

  **2.** Plaintiff shall provide NuSpace with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof.  NuSpace shall respond to Plaintiff's comments within thirty (30) days of the date on which they are received; however, NuSpace is not obligated to respond to any comments regarding the Site Inspection received after seventy-two (72) hours has passed.

**B.** **Compliance Monitoring and Oversight**.  NuSpace shall make a one-time payment of eight thousand five hundred dollars ($8,500.00) to compensate Plaintiff's Counsel for costs and fees to be

incurred for monitoring NuSpace's compliance with this Consent Decree. Payment shall be made payable to "Brodsky & Smith" via U.S. Mail within 30 days of the Effective Date.

C. **NuSpace Document Provision.** During the term of this Consent Decree, within ten (10) business days, NuSpace shall give notice to Plaintiff of all documents related to compliance with the IGP and/or this Consent Decree at the NuSpace Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Any correspondence related to NuSpace's compliance with the IGP and/or this Consent Decree received by NuSpace from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) business days of receipt by NuSpace. Provided, however, that this Consent Decree shall not require NuSpace to disclose any information or documents subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

V. **REIMBURSEMENT OF LITIGATION FEES & COSTS**

A. **Reimbursement of Attorneys' Fees and Costs.** NuSpace shall pay a total of fifty-nine thousand dollars ($59,000.00) to "Brodsky Smith" for investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred by Plaintiff as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky Smith". The payment shall be made within 30 days of the Effective Date.

VI. **DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

A. **Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files a timely motion and is granted an extension of time from the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

B. **Meet and Confer.** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of fourteen (14) business days from the date of the notice. The Parties

may elect to extend this time in an effort to resolve the dispute without court intervention.

C. **Dispute Resolution.** If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

D. **Burden of Proof.** In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

E. **Enforcement Fees and Costs.** In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Federal Rule of Civil Procedure Rule 11, applicable case law interpreting such provisions, and/or as provided by statutory law and/or case law.

VII. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

A. **Plaintiff's Public Release of Claims.** This Consent Decree is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and NuSpace, and its parents, subsidiaries, affiliated entities under common ownership, directors, managers, members, divisions, affiliates, insurers, landlords, lenders, successors or assigns, officers, agents, employees, attorneys and other representatives, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any alleged violation of the CWA, 1997 Storm Water Permit, and/or IGP that was alleged in the Complaint, Notice Letter, or that could have been brought pursuant to the Notice Letter or Complaint. Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

B. **Plaintiff's Release of Additional Claims.** As to Plaintiff for and in his individual capacity only, this Consent Judgment shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against NuSpace or the Releasees based on the

facts alleged in the Complaint and/or the Notice Letter, whether or not based on actions committed by NuSpace.

**C.     Waiver of Rights Under Section 1542 of the California Civil Code**

**1.**     Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against NuSpace, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**2.**     Plaintiff understands and acknowledges that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint or Notice Letter, Plaintiff will not be able to make any claim for those damages against NuSpace and the Releasees.

**D.     NuSpace's Release of Plaintiff.**  NuSpace, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorneys, and other representatives for any and all actions taken or statements made by Plaintiff and his attorney and other representatives, whether in the course of investigating the Claims or otherwise.

**E.     Parties' Release.**  Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates and divisions, and their respective current and former officers, directors, managers, members, employees, shareholders, insurers, landlords, lenders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other

representatives) release each other from any additional attorneys' fees or expenses related to the resolution of this matter.

F.     Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to NuSpace's compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

VIII.     **MISCELLANEOUS PROVISIONS**

A.     **No Admission of Liability.**  Neither this Consent Decree, the implementation of additional or modified BMPs, the revision and implementation thereof of the SWPPP, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  NuSpace maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

B.     **Force Majeure**.  NuSpace will notify Plaintiff if timely implementation of its duties under this Consent Decree becomes impossible due to circumstances beyond the control of NuSpace or its agents and which could not have been reasonably foreseen and prevented by NuSpace's exercise of due diligence.  Any delays due to NuSpace's failure to exercise diligent efforts to comply with the terms of this Consent Decree will not, in any event, be considered to be circumstances beyond NuSpace's control.

C.     **Construction.**  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

D.     **Choice of Law and Venue.**  The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

E.     **Severability.**  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

F.     **Correspondence and Notices.**  Any and all notices and/or correspondence between the Parties

provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

    **1.**    First-class (registered or certified) mail return receipt requested;

    **2.**    Overnight or two-day courier; or

    **3.**    By email on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith
Ryan P. Cardona
BRODSKY SMITH
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Tel:    (877) 534-2590
Fax:   (310) 247-0160
Email: esmith@brodskysmith.com
          rcardona@brodskysmith.com

**If to NuSpace:**

Perry S. Hughes
COX CASTLE & NICHOLSON LLP
2029 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:    (310) 284-2276
Fax:   (310) 284-2100
Email: phughes@coxcastle.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

**G.**    **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**H.**    **Modification of the Consent Decree.** Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court.

**I.**    **Full Settlement.** This Consent Decree contains the sole and entire agreement and understanding

of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**J.     Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and/or warranties (express or implied) concerning the subject matter of this Consent Decree.

**K.     Authority of Counsel.** The undersigned representatives for Plaintiff and NuSpace each certify that they are fully authorized by the party whom they represent to approve this Consent Decree as to form.

**L.     Authority.** NuSpace certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of NuSpace, and to legally bind NuSpace to its terms.

**M.     Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

## IX. COURT APPROVAL

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice Letter which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IT IS SO ORDERED
Date: 4/11/2025     by: _____
                         Hon. R. Gary Klausner
                         U.S. District Judge

*[Party Signatures Appear Below]*

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

SO AGREED AND APPROVED AS TO CONTENT

Dated: 2/14/2025        PLAINTIFF CARLOS GUZMAN

_____
Carlos Guzman

Dated: _____  DEFENDANT KEYSTONE ENGINEERING CO. d/b/a NUSPACE, INC.

By: _____
Name:
Title:

APPROVED AS TO FORM

Dated: _____  BRODSKY SMITH

By: _____
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

Attorneys for Plaintiff

Dated: _____  COX CASTLE

By: _____
Perry S. Hughes

Attorneys for Defendant

IT IS SO ORDERED

Date: _____
_____
The Honorable R. Gary Klausner
United States District Court Judge
Central District of California

Consent Decree                                                                                     16
Civil Case No.: Civil Case No.: 2:24-cv-06453-RGK-BFM

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: _____          **PLAINTIFF CARLOS GUZMAN**

_____
Carlos Guzman

Dated: _____          **DEFENDANT KEYSTONE ENGINEERING CO. d/b/a NUSPACE, INC.**

By:_____
Name:
Title:

**APPROVED AS TO FORM**

Dated: 02/17/2025                 **BRODSKY SMITH**

By: *Ryan P. Cardona*
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

Dated: _____          **COX CASTLE**

By:_____
Perry S. Hughes

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: _____

_____
The Honorable R. Gary Klausner
United States District Court Judge
Central District of California

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: _____

**PLAINTIFF CARLOS GUZMAN**

_____
Carlos Guzman

Dated: __2-19-2025__

**DEFENDANT KEYSTONE ENGINEERING CO. d/b/a NUSPACE, INC.**

By: _/s/ Tim Luu_
Name: Tim Luu
Title: EHS Associate Director

**APPROVED AS TO FORM**

Dated: _____

**BRODSKY SMITH**

By: _____
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

Dated: __2-19-2025__

**COX CASTLE**

By: _/s/ Perry S. Hughes_
Perry S. Hughes

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: _____

_____
The Honorable R. Gary Klausner
United States District Court Judge
Central District of California